Leon B. Silver  (SBN:  012884)
Andrew S. Jacob  (SBN:  022516)
**GORDON & REES LLP**
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003
Telephone:  (602) 794-2460
Facsimile:  (602) 265-4716
lsilver@gordonrees.com
ajacob@gordonrees.com
*Attorneys for Plaintiffs Frimmel, Pishka*
*and BRF Enterprises*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bret Frimmel; Pishka, Inc.; and BRF Enterprises, LLC | ) CASE NO. _____ |
| | ) |
| | ) |
| *Plaintiffs,* | ) **COMPLAINT** |
| | ) |
| vs. | ) **(Federal Question:** |
| | ) **42 USC §§ 1981, 1983,  1985, & 1988)** |
| Joseph M. and Ava Arpaio, husband and wife, personally and in the capacity as Sheriff of Maricopa County; Joshua and Jane Doe Henderson, husband and wife, personally and in the capacity as a Deputy Sheriff  of Maricopa County; Brandon and Jane Doe Jones, husband and wife, personally and in the capacity as a Deputy Sheriff  of Maricopa County; Christopher and Jane Doe Hegstrom, husband and wife, personally and in the capacity as a Deputy Sheriff  of Maricopa County; Sean and Jane Doe Locksa, husband and wife, personally and in the capacity as a Deputy Sheriff  of Maricopa County; and Christopher and Jane Doe Hechavarria, husband and wife, personally and in the official capacity as a Deputy Sheriff  of Maricopa County; Maricopa County Sheriff's Office; and Maricopa County, Arizona | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |
| | ) |
| | ) |

*Complaint, Frimmel v. Arpaio*

Plaintiffs Bret Frimmel, Pishka, Inc., and BRF Enterprises, LLC, allege as follows:

**PRELIMINARY STATEMENT**

1.     This is an action seeking compensatory and punitive damages for wrongful arrest and wrongful prosecution in violation of 42 U.S.C. §§ 1981, 1983 & 1985, attorneys' fees pursuant to § 1988, and for torts arising from gross negligence and intentional infliction of emotional distress.

2.     These claims arise from specific harm that occurred during the course of the ongoing notorious, illegal and abusive attempts by Defendants Maricopa County Sheriff's Office ("MCSO") and Maricopa County, to enforce immigration laws in the face of a federal injunction prohibiting them from such enforcement. MCSO has openly demonstrated contempt for this federal court order, calling it "ludicrous" and "absurd," and referring to the order itself as "crap."

3.     In furtherance of its feud with the federal court, in July 2013, MCSO raided two restaurants that operate under the name "Uncle Sam's" to investigate alleged employment of aliens who lack federal authorization to work in the United States of America ("Unauthorized Aliens"), something that was prohibited by the aforementioned court order, under the guise of investigating whether there was so-called "identity theft."

4.     Plaintiff Bret Frimmel owns and operates Uncle Sam's restaurants through other Plaintiff entities.

5.     Within a few days after the aforementioned raids, the U.S. Department of Justice reached out to Mr. Frimmel to see if he would cooperate in its investigation of MCSO and Sheriff Arpaio.

6.     MCSO arrested Plaintiff Bret Frimmel and Lisa Norton, the general manager of the Uncle Sam's restaurants, after it learned that Mr. Frimmel was communicating with the Department of Justice in regard to that investigation.

7.     MCSO charged Mr. Frimmel, in regard to four specific former Uncle Sam's employees, with: (a) knowingly taking the identity of another; (b) knowingly trafficking

*Complaint, Frimmel v. Arpaio*

**Gordon & Rees LLP**
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

in the identity of another; (c) forgery; and (d) conspiracy to commit taking the identity of another.

8.      MCSO charged Mrs. Norton, in regard to the same four specific former Uncle Sam's employees, with: (a) knowingly taking the identity of another; and (b) conspiracy to commit taking the identity of another.

9.      Upon information and belief, MCSO arrested and charged Mr. Frimmel and Mrs. Norton as retaliation for Mr. Frimmel communicating with the Department of Justice and/or to dissuade them from further communicating with the Department of Justice.

10.     The Maricopa County Attorneys' Office ("MCAO") obtained grand jury indictments of Mr. Frimmel and Mrs. Norton solely based on the testimony of Defendant Henderson, a MCSO Detective.

11.     In the course of its investigation, MCSO and individual defendants made false and misleading statements in both search warrant affidavits and probable cause statements and gave materially false and misleading testimony to the grand jury that indicted Mr. Frimmel and Mrs. Norton.

12.     In fact, MCSO's investigation failed to find evidence that could establish that either Mr. Frimmel or Mrs. Norton had the requisite knowledge element of the charged offenses.

13.     Regardless, Sheriff Arpaio engaged in a media campaign in which he knowingly and/or recklessly defamed Mr. Frimmel and Mrs. Norton with false allegations of illegal activity.

14.     As a result of Defendants' wrongful conduct, Mr. Frimmel and Mrs. Norton suffered, and continue to suffer, emotional distress, reputational damage, and financial damage, including unnecessarily incurring hundreds of thousands of dollars in attorneys' fees and other expenses defending against unfounded charges.

-3-

*Complaint, Frimmel v. Arpaio*

15.     Plaintiffs bring this action seeking substantial compensatory damages to remedy, among other things, injury to business interests and personal reputation, personal injuries including emotional distress damages, lost past and future profits, and attorneys' fees and expenses incurred defending against wrongful arrest and prosecution.

16.     Plaintiffs also seek substantial punitive damages to deter Defendants and others similarly situated from engaging in such abusive use of their powers to investigate and prosecute crimes.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343. This Court has supplemental jurisdiction over the state law claims pursuant 28 U.S.C. § 1367.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391b(1) & (2).

## PARTIES

19.     Plaintiff Bret Frimmel is an Arizona citizen who resides in Maricopa County, Arizona.

20.     Mr. Frimmel owns Plaintiff Pishka, Inc., an Arizona corporation.

21.     Pishka, Inc., owns and operates restaurants located in Maricopa County that do business as "Uncle Sam's."

22.     Mr. Frimmel also owns Plaintiff BRF Enterprises, LLC, an Arizona limited liability company.

23.     BRF Enterprises owns real estate and is the landlord to Uncle Sam's and other tenants.

24.     Mrs. Norton is the manager of the Uncle Sam's restaurants.

25.     Defendant MCSO is a law enforcement agency in Maricopa County, Arizona.

26.     Defendant Joseph M. Arpaio is the Sheriff of Maricopa County, Arizona.

27.     Sheriff Arpaio is sued in both his personal and official capacities.

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

28.     Sheriff Arpaio is the final decision maker for Maricopa County in the area of law enforcement.

29.     Sheriff Arpaio is responsible for setting and implementing MCSO policies and practices that are used to prosecute and deter the employment of Unauthorized Aliens.

30.     Sheriff Arpaio is responsible for setting and implementing MCSO policies and practices that tolerate, if not encourage, MCSO spokespersons to knowingly and/or recklessly defame the targets of MCSO investigations with unwarranted and unsubstantiated accusations of wrongdoing, where doing so furthers his political agenda.

31.      Sheriff Arpaio is responsible for setting and implementing MCSO policies and practices that tolerate, if not encourage, MCSO detectives to provide materially false and/or incomplete affidavits in support of search warrants, where doing so furthers his political agenda.

32.     Sheriff Arpaio is responsible for setting and implementing MCSO policies and practices that tolerate, if not encourage, MCSO detectives to provide materially false and/or incomplete testimony to grand juries, where doing so furthers his political agenda.

33.     Upon information and belief, Sheriff Arpaio participated in the authorization, planning, and supervision of the actions of MCSO employees involved in the events described in this Complaint.

34.     To the extent that Sheriff Arpaio acted within the scope of his employment, MCSO and Maricopa County are liable for damages attributed to his actions.

35.     To the extent that Sheriff Arpaio acted outside the scope of his official capacity, he is personally liable for the damages attributable to those actions.

36.     Defendant Detective Joshua Henderson is a MCSO Deputy Sheriff.

37.     Detective Henderson is sued in both his official and individual capacities.

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

38. To the extent that Detective Henderson acted within the scope of his employment, MCSO and Maricopa County are liable for damages attributed to his actions.

39. To the extent that Detective Henderson acted outside the scope of his employment, he is personally liable for damages attributed to his actions.

40. Defendant Lieutenant Brandon Jones is a MCSO public information officer.

41. Lieutenant Jones is sued in both his official and individual capacities.

42. To the extent that Lieutenant Jones acted within the scope of his employment, MCSO and Maricopa County are liable for damages attributed to his actions.

43. To the extent that Lieutenant Jones acted outside the scope of his employment, he is personally liable for damages attributed to his actions.

44. Defendant Deputy Christopher Hegstrom is a MCSO spokesman.

45. Deputy Hegstrom is sued in both his official and individual capacities.

46. To the extent that Deputy Hegstrom acted within the scope of his employment, MCSO and Maricopa County are liable for damages attributed to his actions.

47. To the extent that Deputy Hegstrom acted outside the scope of his employment, he is personally liable for damages attributed to his actions.

48. Defendant Sean Locksa is a MCSO detective.

49. Detective Locksa is sued in both his official and individual capacities.

50. To the extent that Detective Locksa acted within the scope of his employment, MCSO and Maricopa County are liable for damages attributed to his actions.

51. To the extent that Detective Locksa acted outside the scope of his employment, he is personally liable for damages attributed to his actions.

52. Defendant Christopher Hechavarria is a MCSO detective.

-6-

**Gordon & Rees LLP**
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

53.     Detective Hechavarria is sued in both his official and individual capacities.

54.     To the extent that Detective Hechavarria acted within the scope of his employment, MCSO and Maricopa County are liable for damages attributed to his actions.

55.     To the extent that Detective Hechavarria acted outside the scope of his employment, he is personally liable for damages attributed to his actions.

56.     Sheriff Arpaio and MCSO failed to adequately train the aforementioned detectives in conducting the investigation of the kinds of offenses alleged against Mr. Frimmel and Mrs. Norton and in making public pronouncement concerning such investigations.

57.     Sheriff Arpaio and MCSO failed to adequately supervise the aforementioned detectives and spokespersons in their investigation of Mr. Frimmel and Mrs. Norton and in the making of public pronouncements concerning those investigations.

58.     Defendant Maricopa County, Arizona, is a political subdivision of the State of Arizona that can sue and be sued in its own name.

59.     Upon information and belief, Maricopa County has agreed with, accepted, acquiesced in, and sanctioned Defendants' actions that are alleged herein.

## GENERAL ALLEGATIONS

### Premises Search Warrants

60.     On July 16, 2013, MCSO obtained three search warrants (the "Premises Search Warrants") using a materially false and incomplete affidavit provided by Detective Henderson.

61.     True and correct copies of the applications for the Premises Search Warrants are attached as Exhibits "A," "B," and "C."

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-7-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

62.     Detective Henderson did not state any of the following material facts, all of which were known to him, in the affidavits that he used to apply for the Premises Search Warrants:

a.  That the so-called tip instigating the investigation came from Said Ishak and Denee Porter Ishak, married ex-employees of Uncle Sam's;

b.  That Said Ishak and Denee Porter Ishak had strong motivation to fabricate lies about Mr. Frimmel, Mrs. Norton and Uncle Sam's;

c.  that Said Ishak had earlier been arrested for felony theft of funds from Uncle Sam's on August 2, 2012, for which he was later convicted;

d.  That Denee Porter Ishak placed her tip call to MCSO the same day that her husband was arrested;

e.  That Denee Porter Ishak, was a convicted criminal (possession of drug paraphernalia);

f.  That neither of the Ishaks had worked at the Phoenix Uncle Sam's;

g.  That  Denee Porter Ishak quit working at Uncle Sam's in January 2011 after Mr. Frimmel admonished her for poor work behavior;

h.  That Denee Porter Ishak subsequently lost a claim against Uncle Sam's for unemployment benefits;

i.  That Said Ishak did not work at any Uncle Sam's after the third quarter of 2012;

j.  That neither Said Ishak nor Denee Porter Ishak had any material information regarding Mr. Frimmel's personal residence;

k.  That Arizona Department of Economic Security records did not link any of Uncle Sam's business operations to Mr. Frimmel's home address; and

l.  That MCSO surveillance of Mr. Frimmel's home showed no business activity.

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

63.     Instead, Detective Henderson made the following materially false statements in the affidavits that he used to apply for the Premises Search Warrants:

a.     That MCSO detectives saw Uncle Sam's employee vehicles at Mr. Frimmel's home; and

b.     That County Assessor records linked Mr. Frimmel's home to the Uncle Sam's business

64.     All three of the aforementioned affidavits made in support of the Premises Search Warrants, therefore, had material omissions of facts that showed the Ishaks, the sole source of allegations that Mr. Frimmel knew his employees were Unauthorized Aliens, were highly unreliable informants.

65.     All three of the aforementioned affidavits made in support of the Premises Search Warrants, therefore, contained materially false statements that were the sole basis linking Mr. Frimmel's personal residence to the business of Uncle Sam's restaurants.

66.     In a published special action opinion, the Arizona Court of Appeals ruled that the evidence obtained using the three Premises Search Warrants is inadmissible if the allegations that Mr. Frimmel made in his briefing are proven at an evidentiary hearing. *Frimmel v. Sanders*, 2014 Ariz. App. LEXIS 227, 23-24, ¶ 43, 700 Ariz. Adv. Rep. 28 (App. Nov. 25, 2014).

67.     This evidentiary hearing is scheduled for January 30, 2015.

68.     On July 17, 2013, MCSO used the three Premises Search Warrants to raid two restaurants that operate under the name "Uncle Sam's" and Mr. Frimmel's home.

69.     MCSO conducted these raids to determine whether Uncle Sam's was employing Unauthorized Aliens who took the identities of another.

70.     During those raids, MCSO arrested nine employees for being Unauthorized Aliens who took the identities of another.

71.     MCSO charged four of these nine arrested employees with identity theft.

72.     MCSO released the other five arrested employees without charges.

-9-

73.     After reviewing evidence and interviewing a number of Uncle Sam's employees, Detective Henderson told Mr. Frimmel and his attorney that he considered Mr. Frimmel a victim of Uncle Sam's employees' use of the identities of others and related crimes, and that he did not suspect Mr. Frimmel of any crimes.

74.     Mr. Frimmel and Mrs. Norton are only charged with crimes related to the employment of four former Uncle Sam's employees (the "Cooperating Witnesses").

75.     These Cooperating Witnesses each entered into plea agreements for one count of identity theft.

76.     In these plea agreements, the Cooperating Witnesses agreed to cooperate with the MCSO investigation and prosecution of Mr. Frimmel and Mrs. Norton.

77.     MCSO had federal authorities provide the Cooperating Witnesses the benefits of deferred deportation status and authorization to work in the United States.

## MCSO Investigation and Arrest of Plaintiff

78.     On May 10, 2012, the Department of Justice filed a Complaint in federal court alleging that MCSO and Sheriff Arpaio "have engaged and continue to engage in a pattern or practice of unlawful discriminatory police conduct directed at Latinos in Maricopa County."

79.     A few days after MCSO's July 17, 2013, raid on the Uncle Sam's restaurants, a Department of Justice investigator, Sarah Lopez, contacted Mr. Frimmel to ask for his assistance with the Department's ongoing investigation of MCSO, related to the May 10, 2012, litigation.

80.     Sometime between July 17, 2013, and January 22, 2014, MCSO learned that Mr. Frimmel was cooperating with the Department of Justice in its investigation of MCSO's unlawful discriminatory police conduct directed at Latinos in Maricopa County.

81.     On January 22, 2014, MCSO arrested both Mr. Frimmel and Mrs. Norton, the general manager of the Uncle Sam's restaurants.

-10-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

82.     MCSO charged Mr. Frimmel with knowingly taking the identity of another, conspiracy to take the identity of another, forgery, and knowingly trafficking in the identity of another.

83.     MCSO charged Ms. Norton with knowingly taking the identity of another and conspiracy to take the identity of another.

84.     Upon information and belief, MCSO made the aforementioned arrests and charges to retaliate against Mr. Frimmel and Mrs. Norton for cooperating with the Department of Justice investigation of MCSO.

85.      Upon information and belief, MCSO made the aforementioned arrests and charges to dissuade Mr. Frimmel and Mrs. Norton from further cooperating with the Department of Justice investigation of MCSO.

**Cell Phone Search Warrants**

86.     MCSO obtained three search warrants of cell phone data and records (the "Cell Phone Search Warrants").

87.     On January 22, 2014, MCSO obtained a search warrant for Mrs. Norton's cell phone records.

88.     A true and correct copy of the supporting affidavit for the aforementioned search warrant is attached hereto as Exhibit "D."

89.     On February 4, 2014, MCSO obtained a search warrant for Mr. Frimmel's cell phone records.

90.     A true and correct copy of the supporting affidavit for the aforementioned search warrant is attached hereto as Exhibit "E."

91.     On January 22, 2014, MCSO obtained a search warrant allowing them to extract information directly from the cellular phones belonging to Mr. Frimmel and Mrs. Norton.

92.     A true and correct copy of the supporting affidavit for the aforementioned search warrant is attached hereto as Exhibit "F."

-11-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

93. Detective Hechavarria falsely stated in one Cell Phone Search Warrant affidavit that Mrs. Norton and Mr. Frimmel committed crimes on or about September 30, 2013, something not alleged anywhere else in the criminal case, nor supported by any evidence. (Ex. F at 4.)

94. Detective Locksa falsely stated in a Cell Phone Search Warrant affidavit that Mrs. Norton and Mr. Frimmel committed crimes on or about October 1, 2013, something neither alleged anywhere else in the criminal case, nor supported by any evidence. (Ex. E at 4.)

95. The only evidence that MCSO produced of statements by the four Cooperating Witnesses is recordings and transcripts of free-talk interviews.

96. Detective Locksa falsely stated a Cell Phone Search Warrant affidavit that the Cooperating Witnesses made "collaborating statements" that Mrs. Norton and Mr. Frimmel knowingly hired Unauthorized Aliens and conspired to commit identity theft and forgery. (Ex. E at 6.)

97. In fact, none of the four Cooperating Witnesses made such statements in their free-talk interviews

98. Rather, the Cooperating Witness each stated that they did not know whether Mrs. Norton and Mr. Frimmel had such knowledge.

99. Detectives Locksa and Hechavarria falsely stated in Cell Phone Search Warrant affidavits that the Cooperating Witnesses "were convicted of identity theft and forgery charges." (Ex. E at 6; & Ex. F at 7.)

100. The court docket shows the convictions of the Cooperating Witnesses.

101. A true and correct copy of this court docket is attached as Exhibit "G."

102. This court docket shows that the Cooperating Witnesses were only convicted of identity theft, not forgery. (Ex. G at 1.)

*Complaint, Frimmel v. Arpaio*

**Gordon & Rees LLP**
**111 W. Monroe Street, Suite 1600**
**Phoenix, AZ 85003**

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

103.     Detective Hechavarria falsely stated in his affidavit that "illegal drugs" and "illegal drug trafficking" were part of the criminal activity under investigation. (Ex. F at 7-8.)

104.     Detective Hechavarria omitted from his affidavit that he had no evidence that cell phones (or any telephones) were used to facilitate any of the alleged criminal activity.

105.     Detective Hechavarria falsely stated in his affidavit that Mrs. Norton "owned" Uncle Sam's. (Ex. F at 7.)

106.     All three affidavits made in support of the Cell Phone Search Warrants failed to disclose:

    a.    That Mr. Frimmel had been asked to cooperate with the Department of Justice investigation of MCSO;

    b.    That disgraced MCSO detective Ramon Armendariz was involved in the investigation at the Peoria Uncle Sam's location, where three of the four convicted employees were working;

    c.    That the State obtained deferred deportation status and work authorization documents for the Cooperating Witnesses; and

    d.    That there was no evidence that cell phones were used in the hiring process at Uncle Sam's.

107.     All three of the aforementioned affidavits made in support of the Cell Phone Search Warrants, therefore, contained materially false and misleading statements.

108.     Without the false and misleading statements that Detectives Henderson, Hechavarria, and Locksa made in their Cell Phone Search Warrant affidavits, those affidavits would not have made the requisite showing of probable cause.

109.     In a published special action opinion, the Arizona Court of Appeals ruled that all of the evidence obtained using the three Cell Phone Search Warrants is inadmissible if the allegations that Mr. Frimmel made in his briefing are proven at an

*Complaint, Frimmel v. Arpaio*

1   evidentiary hearing. *Frimmel v. Sanders*, 2014 Ariz. App. LEXIS 227, 23-24, ¶ 43, 700
2   Ariz. Adv. Rep. 28 (App. Nov. 25, 2014).

3       110.     This evidentiary hearing is scheduled for January 30, 2015.

### Lack of Probable Cause to Arrest

4       111.     Detective Henderson made a Probable Cause Statement to support the
    arrest of Mr. Frimmel and Mrs. Norton.

5       112.     A true and correct copy of the aforementioned Probable Cause Statement is
    attached hereto as Exhibit "H."

6       113.      The Probable Cause Statement contains the following materially false
    factual assertions, assertions for which Detective Henderson had no evidence whatsoever:

    a.    That Mr. Frimmel entered four social security numbers into his computer
          and transmitted them to ADP while knowing these numbers were
          fictitious or forged;

    b.    That five of the individuals arrested on July 17, 2013 came forward with
          information that Mr. Frimmel knowingly committed forgery or identity
          theft and/or conspiracy to commit forgery and identity theft;

    c.    That both current and former Uncle Sam's employees stated that Mr.
          Frimmel knowingly hired employees that were using forged identities;

    d.    That Detective Henderson was contacted by four former Uncle Sam's
          employees with information consistent with information provided by the
          five arrested employees;

    e.    That one Uncle Sam's employee told Detective Henderson that Mr.
          Frimmel instructed him to forge the hiring date on another employee's
          W-4 to say he was hired in 2007, rather than 2010;

    f.    That Uncle Sam's employees claimed that Mr. Frimmel was present
          during the hiring process and that he hired them without requiring them
          to provide a valid identification or social security number;

-14-

**Gordon & Rees LLP**
**111 W. Monroe Street, Suite 1600**
**Phoenix, AZ 85003**

g.   That Mr. Frimmel knew some Uncle Sam's employees were working without current food handler's cards;

h.   That Uncle Sam's employees were advised to sign and date blank "applications" and tax forms;

i.   That Uncle Sam's later provided social security numbers that were entered into those applications and tax forms;

j.   That Uncle Sam's employees heard Mr. Frimmel state that he didn't care about employees' immigration status;

k.   That Uncle Sam's employees heard Mr. Frimmel call restaurant staff "illegals";

l.   That Mrs. Norton made derogatory statements regarding Latino workers; and

m.   That Mrs. Norton directed that work applications be given to Latinos (as if she had discretion to withhold applications from them).

114.   Detective Henderson and the MCSO made these statements either knowing them to be materially false or with a reckless disregard for the truth.

115.   In fact, no Uncle Sam's employee (past or present) claimed to have been hired by either Mr. Frimmel or Mrs. Norton.

116.   No Uncle Sam's employee (past or present) claimed that Mr. Frimmel or Mrs. Norton were present when they were hired.

117.   All Uncle Sam's employees interviewed by MCSO stated that lower level managers other than Mr. Frimmel or Mrs. Norton hired new employees.

118.   All Uncle Sam's employees interviewed by MCSO stated that lower level managers other than Mr. Frimmel or Mrs. Norton obtained the requisite proof of identity and authorization to work from new employees.

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

119. All but one of the Uncle Sam's employees interviewed by MCSO stated that they were required to provide the requisite proof of identity and authorization documents as part of Uncle Sam's hiring process.

120. Several employees, including long time managers, told MCSO that Uncle Sam's required valid identification for all new hires and that Mr. Frimmel would fire a manager who hired someone without valid identification.

121. No employee interviewed by MCSO said they signed a blank employment application at the direction of Uncle Sam's.

122. MCSO did not obtain any evidence that Mr. Frimmel was personally involved in accepting identification documents from any employee or that he knew that any such documents were false.

123. MCSO did not obtain any evidence that Mrs. Norton was personally involved in accepting identification documents from any employee or that he knew that any such documents were false.

124. To be guilty of trafficking in the identity of another Mr. Frimmel had to knowingly transmit identifying information without the consent of the person. A.R.S. § 13-2010; *see also id.* at § 13-2008 (knowingly taking another's identity without consent for unlawful purpose); *id.* at § 13-2002 (falsely made, completed, or altered a written instrument with intent to defraud); *id.* at § 13-1003 (knowledge of criminality required for conspiracy).

125. MCSO did not obtain any evidence that Mr. Frimmel knew that the Cooperating Witnesses provided false or forged identification documents.

126. MCSO did not obtain any evidence that Mr. Frimmel wrote anything on any employee's application.

127. MCSO did not obtain any evidence that Mr. Frimmel caused or encouraged any employee-applicant or hiring-manager to make any false entries on an employment application.

-16-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

128.     In the one and only instance identified by MCSO where an employee's W-4 had an incorrect date, Mr. Frimmel caused the correct date of hire to be entered into Uncle Sam's payroll system.

129.     Consequently, MCSO did not have any basis to prove the requisite knowledge element of any of the offenses for which it arrested and charged Mr. Frimmel.

**Defamation**

130.     Immediately after arresting Mr. Frimmel and Mrs. Norton, Sheriff Arpaio and MCSO spokespersons publicly defamed them by falsely stating that Mr. Frimmel and Mrs. Norton knowingly hired Unauthorized Aliens at Uncle Sam's.

131.     Sheriff Arpaio and MCSO spokespersons provided several interviews for television, spoke with newspaper reporters, and issued press releases in which they repeatedly made defamatory false statements regarding Mr. Frimmel and Mrs. Norton.

132.     MCSO and Sheriff Arpaio also posted defamatory false statements on social media, including Sheriff Arpaio's Facebook page.

133.     These defamatory false statements included, among other things, false statements that Mr. Frimmel and Mrs. Norton: (a) committed criminal offenses; (b) knowingly hired undocumented workers; (c) assisted undocumented workers in obtaining false documents; and (d) intentionally solicited Unauthorized Aliens to work at Uncle Sam's.

134.     A January 22, 2014, MCSO press release stated: "Maricopa County Sheriff's detectives have questioned several witnesses who claimed to have first-hand knowledge that Norton and Frimmel colluded together to acquire false identification documents in order to provide those IDs to undocumented workers wishing to be employed at both restaurants."

135.     A true and correct copy of this press release is attached here as Exhibit "I."

136.     At the time, MCSO knew that it had no such evidence.

137.     At the time, MCSO knew that it had no such witnesses.

-17-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

138.    Major newspapers and television stations in Arizona repeated the false statements made in this MCSO press release and otherwise made by MCSO, Arpaio, Jones and/or Hegstrom on January 22, and 23, 2014, in the following publications that are available on-line:

   a. 01/22/14 ABC 15 article "Uncle Sam's Restaurant Owner Bret Frimmel Arrested for Identity Theft, according to MCSO" http://www.abc15.com/news/region-west-valley/peoria/uncle-sams-restaurant-owner-bret-frimmel-arrested-for-identity-theft-according-to-mcso

   b. 01/22/14 Arizona Newszap article "Sheriff's Office arrests Uncle Sam's Owner" http://arizona.newszap.com/westvalley/129058-114/sheriffs-office-arrests-uncle-sams-owner-at-peoria-location

   c. 01/23/14 Arizona Daily Independent article "Uncle Sam's Owner Arrested for Identity Theft http://www.arizonadailyindependent.com/2014/01/23/uncle-sams-owner-arrested-for-identity-theft/

   d. 01/23/14 AZ Central article "Records: Info from Uncle Sam's Restaurant Workers Led to Owner's Peoria Arrest" http://www.azcentral.com/community/peoria/articles/20140123peoria-uncle-sams-owner-arrest-abrk.html

   e. 01/23/14 AZfamily.com article "Uncle Sam's Owner Appears in Court, Released on Own Recognizance" http://www.azfamily.com/news/Police-Uncle-Sams-owner-knowingly-hired-illegal-workers-forged-documents-241704801.html

   f. 01/23/14 AZfamily.com article "Uncle Sam's restaurant Owner Arrested for IDTheft" http://www.azfamily.com/news/Uncle-Sams-restaurant-owner-arrested-for-ID-theft-241533741.html

-18-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

g.  01/23/14 My Fox Phoenix article "Uncle Sam's Owner Arrested for Alleged ID Trafficking"

http://www.myfoxphoenix.com/story/24529851/2014/01/23/uncle-sams-owner-arrested-for-alleged-id-trafficking

h.  01/23/14 New Times article "Joe Arpaio's Workplace Raid of Uncle Sam's Results in First Arrest of Business Owner"

i.  01/23/14 KPHO, Channel 5 article "AZ Restaurant Owner Accused of Forging IDs for Employees" http://www.kpho.com/story/24530789/az-restaurant-owner-accused-of-forging-ids-for-employees

j.  01/23/14 Video from Channel 3 of coverage of Frimmel arrest http://www.youtube.com/watch?v=BbDEKExbvxs

139.    Sheriff Arpaio provided a televised interview regarding the arrests at Uncle Sam's that aired on local Phoenix TV station on January 22, 2014, and was reposted online at the following link: http://www.azfamily.com/news/10-arrested-in-Uncle-Sams-ID-theft-investigation-216084731.html

140.    The news report that used this video mentioned Uncle Sam's by name, and showed footage of the July 17, 2014 raid.

141.    This news report showed Sheriff Arpaio stating that Mr. Frimmel "was knowingly hiring employees with fake social security numbers."

142.    Mr. Arpaio made that statement knowing that he did not have conclusive evidence that Mr. Frimmel had such knowledge.

143.    Sheriff Arpaio and other MCSO personnel defamed Mr. Frimmel and Mrs. Norton, as set out above.

144.    Sheriff Arpaio and other MCSO personnel knew that these defamatory statements were materially inconsistent with the results of the MCSO investigation or had a reckless disregard for the truth of such statements.

-19-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

**Wrongful Indictment**

145.    Although lacking evidence for the requisite knowledge element of the charged offenses, on February 7, 2014, MCAO sought and obtained grand jury indictments of Mr. Frimmel and Mrs. Norton on 13 felony charges.

146.    True and correct copies of these indictments are attached hereto as Exhibits "J" and "K."

147.    A true and correct copy of the grand jury transcript is attached hereto as Exhibit "L."

148.    The indictments against Mr. Frimmel and Mrs. Norton charge them with two counts of conspiracy to commit taking the identity of another and four counts of taking the identity of another.

149.    The indictment against Mr. Frimmel also charges him with two additional counts of taking the identity of another, four counts of trafficking in the identity of another, and one count of forgery.

150.    On September 30, 2013, Detective Henderson obtained information from former Uncle Sam's employee Fernando Gonzalez in a free-talk interview.

151.    A true and correct copy of the transcript of Mr. Henderson's free-talk interview with Fernando Gonzalez is attached hereto as Exhibit "M."

152.    Detective Henderson testified to the grand jury that "[Fernando] Gonzales [sic] told me he was hired by Brett [sic] and that Brett [sic] made the decision to hire him." (Ex. L at 32:11to 32:14.)

153.    The foregoing testimony by Detective Henderson was false because in his Free-talk interview, Fernando Gonzalez actually told Mr. Henderson that he was hired by someone named Lalo and never stated that Mr. Frimmel or Mrs. Norton met with applicants during the hiring process. (Ex. M at 2-3.)

-20-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

154.     Detective Henderson testified to the grand jury that Fernando Gonzalez "stated that he did not sign any forms or present any identification at the time of hire." (Ex. L at 32:12 to 32:14.)

155.     No one told the grand jury that Mr. Gonzalez was not legally required to present identification or work authorization documents until three days after hire.

156.     Detective Henderson testified that Fernando Gonzalez said, when he was a manager hiring for Uncle Sam's, Mrs. Norton instructed him "to give Latinos applications". (*Id.* at 32:20 to 32:21.)

157.     Fernando Gonzalez did not state that Mrs. Norton instructed him to provide applications to persons known to be Unauthorized Aliens.

158.     The foregoing testimony was misleading because it invited the grand jury to wrongly equate hiring Latinos with hiring Unauthorized Aliens.

159.     No one told the grand jury that Fernando Gonzalez denied knowing what happened to documents that were submitted by Uncle Sam's applicants. (Ex. M at 18.)

160.     On September 30, 2013, Detective Henderson obtained information from former Uncle Sam's employee Emidgio Munoz Gonzalez.

161.     A true and correct copy of a report of Mr. Henderson's interview with Emidgio Munoz Gonzalez is attached hereto as Exhibit "N."

162.     Detective Henderson testified to the grand jury that Emigdio Munoz Gonzalez used a social security number that did not belong to him when he was hired at Uncle Sam's. (Ex. L at 29:7 to 29:10.)

163.     The foregoing testimony was misleading because no one told the grand jury that Emidgio Munoz Gonzalez stated that he obtained a social security number (and a social security card) 18 years ago, well before he was hired at Uncle Sam's. (Ex. N at 2.)

164.     No one told the grand jury that Emidgio Munoz Gonzalez had a valid Arizona driver's license. (*Id.*)

-21-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

165.   No one told the grand jury that Emidgio Munoz Gonzalez stated that someone named Manuel, not Mr. Frimmel or Mrs. Norton, hired him to work at Uncle Sam's. (*Id.*)

166.   No one told the grand jury that Emidgio Munoz Gonzalez stated that Mr. Frimmel instructed Uncle Sam's managers to: (a) ask applicants for social security cards and picture IDs; (b) watch applicants fill out their applications; and (c) collect applications when they were done. (Ex. N at 3.)

167.   On September 30, 2013, Detective Henderson obtained information from former Uncle Sam's employee Victor Vargas in a free-talk interview.

168.   A true and correct copy of a report of Mr. Henderson's interview of Victor Vargas is attached hereto as Exhibit "O."

169.   No one told the grand jury that Victor Vargas stated that he provided a social security card and photo identification to Uncle Sam's within the requisite three-days after hiring. (Ex. O at 4.)

170.   No one told the grand jury that Mr. Vargas stated that he obtained a forged social security card from an unknown person who had no relation to Uncle Sam's. (*Id.* at 7-8.)

171.   No one told the grand jury that Mr. Vargas stated that neither Mr. Frimmel nor Mrs. Norton knew that he was using a forged social security card. (*Id.*)

172.   Detective Henderson testified to the grand jury that, in his free-talk interview, former Uncle Sam's employee Valentin Villanueva-Fernan stated Mr. Frimmel hired him to work at Uncle Sam's. (Ex. L at 23:12 to 23:13.

173.   The foregoing testimony was false because Mr. Villanueva-Fernan actually stated that some Uncle Sam's employee whose name he did not remember hired him, not Mr. Frimmel.  (Untranscribed recording of free talk with Villanueva-Fernan.)

174.    No one told the grand jury that Mr. Villanueva-Fernan stated that he had no dealings with Mr. Frimmel beyond "just a few words." (*Id.*)

-22-

175.    No one told the grand jury that Mr. Frimmel and Ms. Norton had good reason to believe that Mr. Villanueva-Fernan was a legitimate immigrant because Arizona Courts did not appear to treat him as an Unauthorized Alien when he was convicted for, and/or found him responsible for, civil and criminal offenses while he was working at Uncle Sam's. (*Id.* at 41:23 to 42:6.)

176.    On January 15, 2014, Detective Henderson obtained information from former Uncle Sam's employee Manuel Arredondo in a free-talk interview.

177.    A true and correct copy of a report of Mr. Henderson's interview of Manuel Arredondo is attached hereto as Exhibit "P."

178.    No one told the grand jury that Manuel Arredondo, stated that an unknown Spanish speaking Uncle Sam's manager required him to produce a social security card and identification when he was hired. (Ex. P at 5.)

179.    No one told the grand jury that Mr. Arredondo admitted that he purchased a forged social security card prior to applying at Uncle Sam's. (*Id.* at 6.)

180.    No one told the grand jury that Mr. Arredondo stated that Mr. Frimmel required employees to obtain a food handler's card.  (*Id.* at 16.)

181.    No one told the grand jury that Mr. Arredondo stated that he did not tell Mr. Frimmel or Mrs. Norton that his food handler's card had expired. (*Id.* at 17.)

182.    No one told the grand jury that Mr. Arredondo stated that, during his 15 years as a kitchen staff member and manager, he never witnessed mistreatment or heard any racial comments from Mr. Frimmel or Mrs. Norton. (*Id.* at 49-50.)

183.    MCAO treated Mr. Arrendondo like the Cooperating Witnesses by providing him with deferred deportation status and authorization to work.

184.    But Detective Henderson did not present any of the exculpatory evidence he obtained from Mr. Arrendondo to the grand jury.

185.    When a member of the grand jury asked whether "making the social security cards" was "part of the forgery," the MCAO attorney merely asked Detective

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

Henderson if he had any evidence of Mr. Frimmel making the social security cards, something that he disavowed. (Ex. L at 41:23 to 42:17.)

186.    Both MCAO and Detective Henderson, in response to the grand juror's question, wrongfully failed to explain what they were alleging Mr. Frimmel forged.

187.    Detective Henderson testified to the grand jury that Mr. Frimmel's ADP contract did not contain explicit E-Verify services language.

188.    The foregoing testimony was misleading because no one told the grand jury: (a) that Detective Henderson was referring to a pre-2007 contract; and (b) that Arizona did not require employers to use E-Verify prior to 2007.

189.    The foregoing testimony was also misleading because no one told the grand jury that, starting in 2007, ADP provided something called "New Hire Reporting Service" to Uncle Sam's.

190.    The foregoing testimony was also misleading because no one told the grand jury that Mr. Frimmel believed that ADP's New Hire Reporting Service met E-Verify requirements.

191.    Detective Henderson testified to the grand jury that, in "approximately the year 2009," the Arizona Office of Environmental Health began to require a Arizona valid identification card to renew a food handler's card. Such cards expire after three years.

192.    The forgoing testimony was misleading and irrelevant because all the Cooperating Witnesses had valid food handler's cards issued after February 2009; there was no basis, therefore, to infer that inability to get a food handler's card put Mr. Frimmel and Mrs. Norton on notice that one of these Cooperating Witnesses was an Unauthorized Alien.

193.    No one told the grand jury that Mr. Frimmel and Mrs. Norton repeatedly denied knowing that the former Uncle Sam's workers at issue in this case were Unauthorized Aliens.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-24-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

194.    No one told the grand jury that, within a few days of the July 17, 2013 raids, the Department of Justice contacted Mr. Frimmel to assist it in regard to its on-going investigation into MCSO.

195.     No one told the grand jury that, shortly after that contact, MCSO turned its investigation against Mr. Frimmel and Mrs. Norton.

196.    Detective Henderson testified to the grand jury that former Uncle Sam's employee Sabrina Stark told him "the reason she left [Uncle Sam's] was because the owner, Brett [sic] Frimmel, treated his employees bad." (*Id.* at 35:17 to 35:19.)

197.    The foregoing testimony was misleading because it omitted telling the grand jury that Ms. Stark subsequently returned to work at Uncle Sam's at her request.

198.    Detective Henderson also testified to the grand jury that Ms. Stark told him "that every employee that Brett [sic] hires and puts in the kitchen is not legal." (*Id.* at 35:19 to 35:20.)

199.    Detective Henderson knew that Ms. Stark was making a false allegation given that MCSO determined that many of Uncle Sam's kitchen employees were properly authorized to work.

200.    Detective Henderson testified to the grand jury that Ms. Stark told him that Mr. Frimmel would "pay them whatever he wants." (*Id.* at 35:20 to 35:23.)

201.    The foregoing testimony was misleading because no one told the grand jury that there was no evidence to corroborate that accusation.

202.    Detective Henderson testified to the grand jury that Mr. Frimmel told former Uncle Sam's employee Fabian Alejandro Rodriguez to disregard what Mr. Rodriguez thought were forged identifications.

203.    The foregoing testimony was misleading because no one explained to the grand jury that Mr. Rodriguez was not qualified to assess whether identification documents were forged and that Uncle Sam's could face significant liability if it rejected applicants based upon Mr. Rodriguez's unqualified suspicions.

-25-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

204.    No one told the grand jury that Mr. Rodriguez was strongly motivated to lie to harm Uncle Sam's.

205.    For example, no one told the grand jury that: (a) Mr. Rodriguez had an extra-marital affair with another employee, Christina Hopkins, while working at Uncle Sam's; (b) Ms. Hopkins subsequently made a sexual harassment complaint against Mr. Rodriguez; (c) Mr. Rodriguez then quit Uncle Sam's; and (c) Ms. Hopkins later filed a paternity complaint against Mr. Rodriquez in Maricopa County Superior Court, case no. FC2011-052844.

206.    When asked by a grand juror about whether "there should be some kind of photocopy of ID" made during the hiring process, Detective Henderson answered that "there should be some kind of photocopy of ID" and "there was no photocopies done." (*Id.* at 38:22 to 39:7.)

207.    MCAO then misled the grand jury by vaguely stating "I don't know it is a requirement for the company to make a photocopy of the identification." (*Id.* at 39:13 to 39:18.)

208.    MCAO should not have left this point unresolved because neither Arizona law nor federal law requires that an employer photocopy employee identification.

209.    Detective Henderson testified to the grand jury that his investigation began "in October of 2012 [when] I received an anonymous tip that referenced an Uncle Sam's restaurant. . . ." (*Id.* at 12:4 to 12:8.)

210.    The foregoing testimony was false and/or misleading because MCSO received the tip on August 2, 2012, and it was not anonymous.

211.     No one told the grand jury any of the following material facts:

  e. That the so-called tip came from Said Ishak and Denee Porter Ishak, married ex-employees of Uncle Sam's;

  f. That Said Ishak and Denee Porter Ishak had strong motivation to fabricate lies about Mr. Frimmel, Mrs. Norton and Uncle Sam's;

-26-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

g.    That Said Ishak was arrested for felony theft of funds from Uncle Sam's on August 2, 2012 and later convicted;

h.    That Denee Porter Ishak placed her tip call to MCSO the same day that her husband was arrested;

i.    That Denee Porter Ishak was convicted of criminal possession of drug paraphernalia;

j.    That Denee Porter Ishak quit working at Uncle Sam's in January 2011 after Mr. Frimmel admonished her for poor work behavior; and

k.    That Denee Porter Ishak subsequently lost her claim against Uncle Sam's for unemployment benefits.

212.    Detective Henderson and MCAO misled the grand jury by failing to disclose these reasons to question the truthfulness of statements made by the Ishaks.

213.    MCAO improperly allowed Detective Henderson to present false testimony to the grand jury, in violation of Arizona Ethical Rule 3.3(a)(3).

214.    MCAO improperly sought indictments from the grand jury knowing that there was no evidence for the requisite knowledge element of the charged offenses, in violation of Arizona Ethical Rule 3.8(a).

215.    MCAO improperly omitted materially exculpatory evidence from its presentation to the grand jury.

## CLAIMS FOR RELIEF

### I. Malicious Arrest and/or Prosecution (42 U.S.C. § 1983)

216.    Plaintiffs incorporate all prior allegations.

217.    Plaintiffs bring this claim under 42 U.S.C. § 1983 to redress violations of their "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law.

218.    The MCSO investigation here did not show probable cause for the search warrants, arrests, or indictments.

-27-

*Complaint, Frimmel v. Arpaio*

219.    The grand jury would not have found probable cause if truthful, material evidence had been properly presented.

220.    The decision to prosecute may not be based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.

221.    Upon information and belief, Sheriff Arpaio, MCAO, and/or Detective Henderson have animus towards individuals with Jewish ancestry.

222.    In the course of investigating this matter, Detective Henderson recorded a February 18, 2014, telephone conversation with Denee Porter Ishak, wherein the following was said (referring to Mr. Frimmel in the third person):

| Henderson | So it's like you know, and again, I doubt he'll want to go to trial and he's spending a lot of money right now on lawyers and he's gonna get lots of fines from ICE from just all his paperwork has been so bad so we'll see how long it goes.  I'm sure you probably know he's pretty tight with his money? |
| Porter | Yes. |
| Henderson | So. |
| Porter | I do. |
| Henderson | Yeah. So . . . |
| Porter | He's Jewish.  We know. |
| Henderson | (Laughs) Yeah.  So he's - yeah.  We'll see what, what happens but I doubt it's gonna go to trial but worse case, or in case it does, I just have to ask.  That way the county attorney knows and I can tell them too – well if you guys want to take this to trial so many people are gonna come in and testify and again you know um all of you guys from the statements I've been getting is all saying the same thing about him so the jury that sees that and hears that is gonna be like well who are we gonna believe, this one guy saying no it's not true or all these other employees that have been there several years they're all saying the same thing? |

223.    Detective Henderson, thereby, manifested animus towards individuals with Jewish ancestry in the course of investigating this matter.

224.    Mr. Frimmel has Jewish Ancestry.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-28-

*Complaint, Frimmel v. Arpaio*

225.     Upon information and belief, Defendants' decisions to provide false and/or misleading affidavits and grand jury testimony were wrongfully motivated by: (a) animus towards individuals with Jewish ancestry; and (b) an intention to retaliate for Mr. Frimmel and Mrs. Norton cooperating with the Department of Justice and discourage further cooperation.

226.     Upon information and belief, Defendants' decisions to arrest and prosecute Mr. Frimmel and Mrs. Norton were wrongfully motivated by: (a) animus towards individuals with Jewish ancestry; and (b) an intention to retaliate for Mr. Frimmel and Mrs. Norton cooperating with the Department of Justice and discourage further cooperation.

227.     Upon information and belief, Defendants' decisions to defame Mr. Frimmel and Mrs. Norton were wrongfully motivated by: (a) animus towards individuals with Jewish ancestry; and (b) an intention to retaliate for Mr. Frimmel and Mrs. Norton cooperating with the Department of Justice and discourage further cooperation.

228.     Defendants' wrongful actions violated multiple rights, any one of which can fully support this claim. These include rights protected by the United States Constitution first, fourth, fifth and fourteenth amendments as well as rights protected by the Arizona Constitution Article 2, Section 4 (Due Process), Article 2, Section 6 (Free Speech), Article 2, Section 8 (Right to Privacy), and Article 2, Section 13 (Civil Rights).

229.     As a consequence of the illegal searches and seizures carried out by Defendants and the malicious arrest and/or prosecution of Mr. Frimmel and Mrs. Norton, Plaintiffs suffered substantial economic and personal injury, including (a) emotional distress; (b) medical expenses incurred to treat such emotional distress; (c) wages and other income lost as a consequence of such emotional distress; (d)  medical expenses and lost wages and income that will result in the future from such emotional distress; (e) the value of lost personal and business reputations; and (f) the expenditure of substantial

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

attorneys' fees and other litigation expenses incurred defending against unwarranted criminal charges (collectively "Special Damages").

230.    Sheriff Arpaio, MCSO, Maricopa County, and Detectives Henderson, Locksa, and Hechavarria are liable to each Plaintiff so injured for special damages in amounts to be proven at trial. 42 U.S.C. § 1983.

## II. Malicious Prosecution (Arizona Law)

231.    Plaintiffs incorporate all prior allegations.

232.    Under Arizona law, "the elements of a malicious prosecution claim are: (1) a criminal prosecution, (2) that terminates in favor of the plaintiff, (3) with the defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975).

233.    Each of the foregoing elements is satisfied here.

234.    Maricopa County, therefore, is liable to Mr. Frimmel for Special Damages in amounts to be proven at trial.

## III. Abuse of Process (Arizona law and 42 U.S.C. § 1983)

235.    Plaintiffs incorporate all prior allegations.

236.    A person who uses a criminal legal process primarily for a purpose for which it was not designed, is subject to liability to the other for harm caused by abuse of process.

237.    MCSO and Sheriff Arpaio willfully caused the arrest and prosecution of Mr. Frimmel primarily for the improper purposes of retaliation for his cooperation with the Department of Justice Investigation of MCSO and deterrence of further cooperation.

238.    The presence or absence of probable cause is immaterial to a claim seeking compensatory damages for abuse of process.

239.    MCSO, Sheriff Arpaio and Detective Henderson withheld material exculpatory evidence and committed related perjuries in sworn testimony and discovery responses for the wrongful purpose of drawing out the criminal prosecution of Mr.

-30-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

Frimmel so as to keep pressure on him to not cooperate with the Department of Justice investigation of MCSO and to deprive him of his constitutional right to a speedy trial.

240.    As a consequence of these actions, Mr. Frimmel needlessly incurred litigation related expenses, particularly as incurred to compel production of wrongfully withheld material exculpatory evidence.

241.    As a consequence of these actions, Mr. Frimmel and the other Plaintiffs needlessly lost personal earnings, opportunities and business profits.

242.    Also, as a consequence of these actions, Mr. Frimmel had emotional suffering, and he and the other Plaintiffs lost value of personal and business reputations.

243.    Sheriff Arpaio, MCSO, Maricopa County, are liable to Plaintiffs for damages in an amount sufficient to compensate them for Special Damages, including expenses incurred as a result of Defendants withholding exculpatory evidence during the criminal litigation against Mr. Frimmel and Mrs. Norton.

### IV. Illegal Search and Seizure: Cell Phones (42 U.S.C. § 1983)

244.    Plaintiffs incorporate all prior allegations.

245.    Plaintiffs bring this claim under 42 U.S.C. § 1983 to redress violations of his "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law.

246.    Mr. Frimmel had reasonable expectations of the privacy of his cell phone records and data.

247.    MCSO, therefore, needed a search warrant to search Mr. Frimmel's cell phone records and data.

248.    Detectives Hechavarria and Locksa did not have probable cause to obtain search warrants authorizing them to search and seize Mr. Frimmel's cell phone records and data.

249.    Because Detectives Hechavarria and Locksa knew that they did not have probable cause to obtain these search warrants, they intentionally provided false,

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-31-

incomplete, and/or misleading information in the affidavits made to support applications for those warrants.

250. In the alternative, because Detectives Hechavarria and Locksa knew that they did not have probable cause to obtain these search warrants, they recklessly disregarded the truth when they provided false, incomplete, and/or misleading information in the affidavits made to support applications for those warrants.

251. MCSO would not have obtained valid search warrants if Detectives Hechavarria and Locksa had provided truthful and complete affidavits in support of their applications for such warrants.

252. The search and seizure of Mr. Frimmel's and Mrs. Norton's cell phone records and data, therefore, violated the United States Constitution, amendments four and fourteen, and analogous articles of the Arizona Constitution.

253. As a result of the illegal searches and seizures of cell phone records and data, Plaintiffs suffered injuries and have a valid claim for Special Damages against Sheriff Arpaio, MCSO, Maricopa County, and Detectives Hechavarria and Locksa in an amount to be proven at trial.

**V. Illegal Search and Seizure: Business Records (42 U.S.C. § 1983)**

254. Plaintiffs incorporate all prior allegations.

255. Plaintiffs bring this claim under 42 U.S.C. § 1983 to redress violations of his "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law.

256. Mr. Frimmel had reasonable expectations of the privacy of his home and business records kept therein.

257. MCSO, therefore, needed a valid search warrant to search Mr. Frimmel's home and to seize business records found therein.

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

258.    Detective Henderson did not have probable cause to obtain search warrants authorizing him to search Mr. Frimmel's home or to seize Uncle Sam's business records found therein.

259.    Because Detective Henderson knew that he did not have probable cause to obtain these search warrants, he intentionally provided false, incomplete, and/or misleading information in the affidavits made to support applications for those warrants.

260.    In the alternative, because Detective Henderson knew that he did not have probable cause to obtain these search warrants, he recklessly disregarded the truth when he provided false, incomplete, and/or misleading information in the affidavits made to support applications for those warrants.

261.    MCSO would not have obtained valid search warrants if Detective Henderson had provided truthful and complete affidavits in support of his applications for such warrants.

262.    The search of Mr. Frimmel's home and the seizure of Uncle Sam's business records found therein, therefore, violated the United States Constitution, amendments four and fourteen, and analogous articles of the Arizona Constitution.

263.    As a result of the illegal search of Mr. Frimmel's home and the illegal seizure of business records found therein, Plaintiffs suffered injuries and have a valid claim for Special Damages against Sheriff Arpaio, MCSO, Maricopa County, and Detective Henderson in an amount to be proven at trial.

## VI. Violation of Civil Rights (42 U.S.C. § 1981)

264.    Plaintiffs incorporate all prior allegations.

265.    Mr. Frimmel is of Jewish ancestry.

266.    Upon information and belief, Sheriff Arpaio, MCSO, and Detective Henderson have animus towards those of Jewish ancestry.

-33-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

267.     Upon information and belief, Sheriff Arpaio and Detective Henderson were motivated by such animus when they decided to give false, incomplete and/or misleading affidavits and testimony in this matter.

268.     Upon information and belief, Sheriff Arpaio and Detective Henderson were motivated by such animus when they decided to selectively prosecute Mr. Frimmel and Mrs. Norton.

269.     In so doing, these defendants violated Mr. Frimmel's right to enjoy the same security of persons and property as is enjoyed by other citizens.

270.     In so doing, these defendants violated Mr. Frimmel's right to be subject to no more punishment, pains, and penalties than other citizens.

271.     Sheriff Arpaio and Detectives Henderson are liable in their individual capacities for damages arising from the violation of Mr. Frimmel's rights.

272.     Mr. Frimmel is entitled to sufficient damages to compensate him, to the extent caused by violation of 42 U.S.C. § 1981,  for injury to business interests (including lost profits, good will and value) and attorneys' fees and other expenses incurred responding to the raids and defending against charges brought against him.

### VII. Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985)

273.     Plaintiffs incorporate all prior allegations.

274.     Sheriff Arpaio, MCSO, and Detectives were motivated to selectively prosecute Mr. Frimmel by animus towards persons with Jewish ancestry and faith.

275.     Defendants all: (a) provided false, incomplete and/or misleading affidavits and testimony; (b) made defamatory public statements; and/or (c) selectively prosecuted; and/or (d) encouraged the other defendants to do so.

276.     Those Defendants who were not personally motivated by animus towards persons of Jewish ancestry had reason to know that one or more of the other defendants were so motivated.

-34-

*Complaint, Frimmel v. Arpaio*

277.  Defendants, therefore, were all acting in concert to interfere with civil rights as defined by 42 U.S.C. § 1985.

278.  Mr. Frimmel, therefore, has an action for the recovery of damages caused by such actions, against any one or more Defendants.

279.  Mr. Frimmel is entitled to sufficient damages to compensate him for Special Damages in an amount to be proven at trial.

### VIII. Attorneys' Fees (42 U.S.C. § 1988)

280.  Plaintiffs incorporate all prior allegations.

281.  Plaintiffs have stated valid claims pursuant to 42 U.S.C. §§ 1981, 1983, and/or 1985.

282.  To the extent that Plaintiffs are the prevailing party under any or all of these claims, they are entitled to be awarded their reasonable attorney's fees and expert witness expenses incurred pursuing those claims, pursuant to 42 U.S.C. §1988.

### IX. Defamation (Arizona Law)

283.  Plaintiffs incorporate all prior allegations.

284.  Sheriff Arpaio, Detective Henderson and MCSO spokespersons Brandon Jones and Christopher Hegstrom made multiple false factual assertions to news media, and in other public forums, with either knowledge that such statements were false or with reckless disregard for the truth of those statements.

285.  A reasonable person with these defendants' knowledge at the time would expect that such statements would harm Plaintiffs' reputations and business interests.

286.  As a result of such statements, Plaintiffs did suffer harm to reputation and business interests.

287.  Sheriff Arpaio, MCSO, Maricopa County, and Detective Henderson and MCSO spokespersons Brandon Jones and Christopher Hegstrom are liable for Special Damages in an amount to be proven at trial.

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

## X. Grossly Negligent Restraint During Arrest (Arizona Law)

288.     Plaintiffs incorporate all prior allegations.

289.     When Mr. Frimmel was arrested, Detective Henderson had a duty to restrain him in handcuffs in a reasonably safe manner.

290.     Detective Henderson placed Mr. Frimmel in handcuffs in an unnecessarily rough manner that caused discomfort in Mr. Frimmel's right arm and shoulder.

291.     At the time, Mr. Frimmel calmly complained that he was suffering significant discomfort in his right arm and shoulder.

292.     Detective Henderson ignored Mr. Frimmel's complaints.

293.     Detective Henderson had no reason to ignore Mr. Frimmel's complaints or to restrain Mr. Frimmel to the point of causing such an injury.

294.     A reasonable person would expect that someone restrained in such a manner would suffer physical injury.

295.     As a result of being restrained in an unnecessarily rough manner Mr. Frimmel did suffer a physical injury, an acute compression of his right thoracic outlet region.

296.     This acute thoracic outlet compression resulted in weakness to muscles innervated by the median nerve in Mr. Frimmel's right hand.

297.     Mr. Frimmel required medical treatment and physical therapy for this injury.

298.     Mr. Frimmel incurred medical expenses for such treatment.

299.     This injury and its subsequent treatment caused Mr. Frimmel needless pain and suffering.

300.     A reasonable person would have known that restraining Mr. Frimmel in such a manner was highly likely to cause him significant injury.

301.     Detective Henderson, therefore, was grossly negligent.

-36-

302. Detective Henderson, MCSO, and Maricopa County are jointly liable for the physical injuries and emotional distress that resulted from the grossly negligent manner in which Mr. Frimmel was restrained.

303. Detective Henderson, MCSO, and Maricopa County are liable to Mr. Frimmel for special damages in an amount to be proven at trial to compensate him for the resultant medical expenses, pain and suffering, and value of the loss of the full use of his right hand.

### XI. Intentional Infliction of Emotional Distress (Arizona Law)

304. Plaintiffs incorporate all prior allegations.

305. The conduct by Sheriff Arpaio, MCSO and Detectives Henderson, Locksa, and Hechavarria was extreme and outrageous because they intentionally presented false, incomplete and misleading information in sworn affidavits and testimony conduct for the purpose of obtaining search warrants and grand jury indictments in the absence of probable cause all of which was designed to cause injury to personal reputation, injury to business interests, and great emotional distress.

306. The conduct by Sheriff Arpaio, MCSO, Detective Henderson and MCSO spokespersons Brandon Jones and Christopher Hegstrom was extreme and outrageous because they intentionally presented false, incomplete and misleading information concerning Plaintiffs to the public that was designed to defame Plaintiffs and cause them emotional distress.

307. In so doing Defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress will result from their conduct.

308. Defendants' wrongful conduct did cause Mr. Frimmel and Mrs. Norton severe emotional distress.

309. Mrs. Norton's severe emotional distress was manifested by substantial physical symptoms and required a course of medical treatment.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-37-

*Complaint, Frimmel v. Arpaio*

310.    Sheriff Arpaio, MCSO, Maricopa County, Detectives Henderson, Locksa, and Hechavarria, and MCSO spokespersons Jones and Hegstrom are liable to Mr. Frimmel for damages in an amount sufficient to compensate him: (a) suffering emotional distress; (b) medical expenses incurred to treat such emotional distress; (c) for wages and other income lost as a consequence of such emotional distress; and (d) medical expenses and lost wages and income that will result in the future from such emotional distress.

## XII. Grossly Negligent Supervision (Arizona Law)

311.    Plaintiffs incorporate all prior allegations.

312.    Sheriff Arpaio, MCSO, and Maricopa County failed to adequately supervise and train Detectives Henderson, Locksa, and Hechavarria and MCSO Spokespersons Jones and Hegstrom to ensure that they understood and abided by their duty to provide truthful, complete and accurate affidavits and testimony and avoided making public defamatory statements concerns those not yet convicted of crimes.

313.    Contrary to that duty to supervise and train, Sheriff Arpaio, MCSO, and Maricopa County created an atmosphere of contempt for constitutional rights within MCSO.

314.    Sheriff Arpaio, MCSO, and Maricopa County knew or had reason to know facts which would lead a reasonable person to realize that such an atmosphere of contempt and such failure to properly supervise and/or train detectives would create an unreasonably high risk of harm to Plaintiffs.

315.    Sheriff Arpaio, MCSO, and Maricopa County, therefore, are liable to Plaintiffs for gross negligence in the performance of their duties to supervise and train detectives.

316.    Sheriff Arpaio, MCSO, and Maricopa County are liable to each Plaintiff so injured for damages in amounts to be proven at trial.

## XIII. Punitive Damages

317.    Plaintiffs incorporate all prior allegations.

-38-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

318.    The conduct here by Sheriff Arpaio, MCSO, and Detectives Henderson, Locksa, and Hechavarria was outrageous, aggravated, malicious and fraudulent because it was intentionally undertaken to subject Mr. Frimmel and Mrs. Norton to an unwarranted arrest and criminal prosecution as retaliation for their cooperation with the Department of Justice's investigation of MCSO and out of religious and racial prejudice.

319.    This conduct was undertaken with an evil mind because each of these Defendants surely should have been consciously aware of the evil of his actions, of the spitefulness of his motives or that his conduct is so outrageous, oppressive or intolerable in that it creates a substantial risk of tremendous harm to others.

320.    Sheriff Arpaio, MCSO, Maricopa County, and Detectives Henderson, Locksa, and Hechavarria, therefore, are liable for punitive damages in an amount sufficient to deter them and others similarly situated from engaging in such misconduct in the future.

## PRAYER FOR RELIEF

Based on the foregoing claims, Plaintiffs ask for the following relief:

A. Compensatory and special damages to be awarded jointly against all Defendants in an amount sufficient to fully compensate each Plaintiff for: (a) injury to business interests (including lost profits and diminution in the value of business assets and opportunities); (b) emotional distress; (c) injury to reputation; and (d) physical injuries incurred during the unwarranted rough restraint of Mr. Frimmel, and medical expenses and other special damages related thereto; (e) attorneys' fees and other expenses incurred defending against unwarranted criminal charges; and (f) attorneys' fees and other related litigation expenses incurred pursuing this action.

B. Punitive damages to be awarded jointly against Sheriff Arpaio, MCSO, Maricopa County, and Detectives Henderson, Locksa, and Hechavarria in an amount sufficient to deter them and others similarly situated from engaging in such misconduct in the future.

-39-

*Complaint, Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

C. Attorneys' fees and expert witness fees and related expense incurred pursuing the claims made herein.

D.  Further relief as the Court deems just.

DATED this 20th day of January, 2015.

GORDON & REES LLP

By:   *s/ Leon B. Silver*
       Leon B. Silver
       Andrew S. Jacob
       111 W. Monroe St., Suite 1600
       Phoenix, AZ  85003

       Attorneys for Plaintiffs
       *BRET FRIMMEL; PISHKA, INC.; and*
       *BRF ENTERPRISES, LLC*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

-40-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

# Addendum

## Exhibits (filed separately)

| Ex. | Description | Bates |
|-----|-------------|-------|
| A | 3217 E. Shea Blvd., Phoenix, Search Warrant | GR000001 |
| B | 13325 E. Cochise Rd., Scottsdale, Search Warrant | GR000021 |
| C | 18913 N. 83rd Ave., Search Warrant | GR000041 |
| D | Norton Cell Records, Search Warrant | GR000067 |
| E | Frimmel Cell Records, Search Warrant | GR000071 |
| F | Cell Data, Search Warrant | GR000083 |
| G | Docket Charges Against Witnesses | GR000094 |
| H | Probable Cause Statement | GR000096 |
| I | MCSO Press Release | GR000100 |
| J | Frimmel Indictment | GR000102 |
| K | Norton Indictment | GR000110 |
| L | Grand Jury Transcript | GR000118 |
| M | Fernando Gonzalez, Free-Talk transcript | GR000165 |
| N | Emigdio Munoz Gonzalez, Free-Talk report | GR000199 |
| O | Victor Vargas, Free-Talk transcript | GR000205 |
| P | Manuel Arrendo, Free-Talk transcript | GR000243 |

*Complaint, Frimmel v. Arpaio*